## FENTON IRBY, Respondent, v. BERT STUBBLEFIELD, Appellant.

### Springfield Court of Appeals, January 19, 1914.

1. **VENDOR AND VENDEE: Warranty: Contract of Parties.** A general warranty by the vendor as to soundness does not cover patent defects nor those known to the buyer. But in a sale or trade, as in construing all contracts, the object is to discover the real intent of the parties.

2. **EXCHANGING PERSONAL PROPERTY: Contract: Defects Bargained Against.** Suit in replevin for the return of a horse traded by plaintiff to defendant. Evidence examined and reviewed and *held* to show an agreement on the part of the defendant to take back his horse if he possessed any other defects than certain ones noticed at the time of the trade.

3. ——: **Warranty as to Condition.** Plaintiff and defendant traded horses. Defendant's horse had certain blemishes, one of which did not disclose its full effects. Evidence examined and *held* to prove that defendant specially warranted as against any defects resulting therefrom.

Appeal from Greene County Circuit Court.—*Hon. Guy D. Kirby*, Judge.

AFFIRMED.

*Hamlin & Seawell* for appellant.

(1) The court should have instructed the jury at the close of plaintiff's evidence in chief, to return a verdict for the defendant because this case is purely within the *caveat emptor* rule. Anthony v. Potts, 63 Mo. App. 517; Doyle v. Parish, 110 Mo. App. 470; Moore v. Koger, 113 Mo. App. 423; Grogean v. Darby, 135 Mo. App. 586; Samuels v. Guin's Est., 49 Mo. App. 10. (2) The court erred in refusing to give the instruction requested by defendant. See authorities under 1.

*Moon & Moon* for respondent.

(1)   Rule of *"caveat emptor"* has no application where plaintiff seeks to recover on an express representation or warranty of soundness.   Cottril v. Krum, 100 Mo. 403, 404 and 405; Samuels v. Guin's Est. 49 Mo. App. 10.   (2)   One remedy in a case of this character is replevin.   Griffin v. McDonald, 145 S. W. 505, and cases cited; Swafford v. Jacobs, 66 Mo. App. 362; Plow Co. v. Wayland, 81 Mo. App. 305.   (3)   The real intention of the defendant was to make a positive representation of fact expecting the plaintiff to consider the same as a representation of fact, and that plaintiff so understood the same and was induced thereby and acted thereon.   Faust v. Koers, 111 Mo. App. 561.

ROBERTSON, P. J.—Plaintiff and defendant traded horses.   The plaintiff undertook to rescind and returned to defendant the horse for which he had traded and demanded the return of his horse.   The defendant refused to comply with this demand and plaintiff brought his action before a justice of the peace in replevin for the horse he originally owned. After a trial in the justice of the peace court, an appeal was taken to the circuit court, where, on a trial anew, the plaintiff obtained a verdict and judgment, from which the defendant has appealed.

The testimony discloses that this was plaintiff's first experience in the horse trading business.   He was about twenty-one years of age at the time of the transaction.   The defendant was engaged in the mercantile business and farming at Birdeye in Greene county.

Plaintiff testifies that shortly before the trade he went into the defendant's store and the question of a trade was brought up; that plaintiff then asked defendant if his horse had any blemishes on him, to which the defendant replied that he did not know that he had any, except that he had a wire cut on him, and

177 Mo. App. 17

told plaintiff to bring his horse to the store, which plaintiff did; that plaintiff examined the defendant's horse, which the defendant stated he guaranteed to be safe and sound "except that little bump on his knee;" that plaintiff then said he had discovered little bumps on his head, to which the defendant replied, "Them two places is all that is wrong with him;" that at the time of plaintiff's examination the horse had on a collar and collar pad and upon the plaintiff raising these he discovered that "one shoulder looked like it was kind of shrunk and I asked him what was the matter with the shoulder. He laughed and says, 'What else are you going to find—there is nothing the matter with the horse but the little bump on his knee and that one on his head—I can guarantee him to be all right every way;'" that they hitched both animals to a wagon and the plaintiff says he noticed that defendant's horse, before being taken out of his harness, threw his head to one side, and that defendant thereafter further repeated that he would guarantee the horse against everything except the little bump on his head and the little bump on his knee, and that he would guarantee him to be all right; that the plaintiff then saddled the horse and started off, stating to the defendant that if defendant's horse was not what it was recommended to be he would bring it back and if the horse he had traded to the defendant was not what he (plaintiff) said it was he would take it back, and that the defendant said to bring back his horse if plaintiff found anything wrong with him except "that little bump on his knee and that little bump on his head;" that when he started home he noticed that the horse limped and would throw his head to one side, and that he took him home but brought him back to defendant the next morning and demanded the return of his horse.

The defendant himself testified that he told the plaintiff that he would guarantee the horse sound out-

side of everything the plaintiff could see and also stated, "You can see all that is wrong with the horse, outside of that I will guarantee him sound." There was also testimony of a witness tending to prove that the defendant knew there was something wrong with the horse's shoulder that could not be seen. A witness testified that he was formerly the owner of the horse and that when the horse was about five months old he had this shoulder broken and that "it kind of made him shorter-step with that foot than he did with the other."

The case was tried in the circuit court to a jury and the instructions given were free from error.

The testimony clearly justifies the conclusion that the plaintiff was, by reason of the discovery of the sunken place in the horse's shoulder, led to believe that there was some defect as a result thereof, which he was not able to fully discern and, therefore, intended to exact of the defendant a specific warranty as to that particular point and that the defendant so understood the plaintiff and, for the purpose of inducing the trade, made the assertions the plaintiff testifies he made and which the jury, under the instructions given to them, must have found to be true.

This, we think, is not a case in which the defendant merely expressed an opinion leading the plaintiff to believe that he must examine and judge for himself, as was the case in Anthony v. Potts, 63 Mo. App. 517; nor an instance in which there was an obvious defect, the result of which might be determined upon a mere inspection as in Doyle v. Parish, 110 Mo. App. 470, 85 S. W. 646. Neither does it come within the rule laid down in Moore v. Koger, 113 Mo. App. 423, 87 S. W. 602, where it is held that when the buyer has an opportunity to inspect, an *implied* warranty cannot be invoked. The case of Grojean v. Darby, 135 Mo. App. 586, 116 S. W. 1062, relied upon by the defendant, is

not applicable to this case for the reason that the character of the action and the facts upon which the case was decided are entirely different from those in this case.

It is said in Samuels v. Guin's Est., 49 Mo. App. 8, 10, that, "The general rule doubtless is that the general warranty of soundness does not cover patent defects, nor defects known to the buyer. It is, however, a matter of contract; and, as in construing all agreements, so with this undertaking, the object is to discover the real *intention* of the parties." It is further said, however, that "The rule is clearly well settled that the vendor *may* in express terms warrant against an obvious defect. If the undertaking is clear and unequivocal, we know of no rule of law that will permit the warrantor to escape the obligation of his contract."

In the case at bar, we hold that the defendant must have understood that the plaintiff was exacting of him a special warranty as to any defect in the horse's shoulder caused by the injury that had left the depression and the warranty by defendant of the soundness of the horse, except the bump on the head and the one on the knee, was made to and did induce the plaintiff to make the trade. Under the facts we hold that the court properly instructed the jury and that the judgment is for the right party and must be upheld. The judgment is affirmed. *Sturgis, J.,* concurs and files a separate opinion. *Farrington, J.,* concurs in result and files a separate opinion.

## CONCURRING OPINION.

STURGIS, J.—There is another reason why the plaintiff should recover in this case. The evidence shows that the visible defects on the horse's shoulder were sufficient to arouse plaintiff's suspicions that there might be some defect more serious than a mere

surface blemish, such as a collar mark.  The plaintiff guessed that it might indicate that the horse had the "spavin" or "swinney"—diseases which might seriously affect the horse's value and usefulness.  What latent defect there was or how serious could not be discovered by a layman from a casual inspection. That the horse did in fact have a serious defect, much impairing his value, is beyond question.  That defect was a broken shoulder, which happened to it while a colt.  The plaintiff did not know this or discover it before the trade was consummated.  The defendant admits: "I testified out there that I knew there was something wrong with the horse's shoulder.  I didn't know what caused it.  Q.  You knew it was slipped or broken or something?  A.  Yes, sir, I knew there was something the matter with it.  Q.  You never disclosed this defect?  A.  No sir, I didn't go around and tell him the horse had a broken shoulder."  The plaintiff says he became more suspicious that there was some more serious defect in the horse's shoulder while riding him home.  He afterward learned of the horse's true condition and the nature and cause of his injury by inquiry from a former owner.

On this state of facts we find that at the consummation of the trade, and as a condition thereof, plaintiff asked the defendant if he would take the horse back if there was anything wrong with him other than the visible blemishes they had talked about and defendant replied: "Yes, sir, I will guarantee him to be all right.  Bring him back if you find anything wrong with him except that little bump on his knee and that little bump on his head.  I will guarantee him to be all right."  This is more than a mere guarantee as to soundness; it is a plain contract that the horse was to be taken back by defendant and plaintiff's horse returned to him in case the horse plaintiff was trading for was found to have any such defect as the evidence plainly shows he did have.  Such was the contract of

the parties and the verdict of the jury enforces that contract.

All concur.

FARRINGTON, J.—I am unable to reconcile my views as to the law of warranty of soundness with those of my associates as applied to this case. Here, the defect was the effect resulting from the breaking of the shoulder when the animal was a colt; the defect was not the *cause,* but the effect, i. e., the effect the once broken shoulder had on the outward appearance—a shrunken place—and on the animal's gait. There is no evidence whatever that the shoulder was in any way diseased, or, indeed, that any disease would result from a broken shoulder; and, since the broken bone had grown together, it was not the defect complained of by the plaintiff. It is true, the broken bone, which had healed, was latent; but the resultant effect of the breaking of the bone in this case—the shrunken place and the shortened step—was the real defect complained of, and that was perfectly apparent on ordinary inspection, and at least was apparent to the plaintiff before he purchased because he testified that he saw the horse driven to a wagon and noticed a limp in his walk and called particular attention to the shrunken place in the shoulder. Hence, according to my view, the defect was patent, and one about which the plaintiff admits he knew.

The cases cited in the majority opinion are those where the defect consisted of a diseased condition which might and probably would inform the purchaser that something was wrong; it was the existing disease that caused the defect, which disease was unknown. In this case there was no diseased condition, for, so far as the evidence shows, the bone had grown together, and the only defects existing were those which were apparent—the consequences or results of a once broken bone.

Consider the case of the mule with the moon-eye: Suppose the purchaser had noticed some twitching about the eye that caused him to suspicion that something was wrong to the extent that he inquired whether the mule had moon-eye. I admit that a warranty of soundness would hold the seller if the mule at that time did have the disease inquired about, because it was hidden and probably could not have been known merely from the twitching. But, suppose the purchaser noticed some twitching about the mule's eye which was caused by the animal once having had the moon-eye but from which it had entirely recovered so that there was no diseased condition at the time of the purchase, could a recovery be had merely because the eye had been affected as a consequence of the disease, after the disease was cured and no longer existed and the twitching was the only defect which was apparent? I think not.

I believe the case at bar, so far as the warranty of soundness is concerned, falls within the rule laid down in the line of authorities which hold that a general warranty of soundness (and in this case the strongest warranty made was, ''I will guarantee him to be all right)'' does not cover patent defects nor defects known to the buyer. See Samuels v. Guin's Estate, 49 Mo. App. l. c. 10, and Doyle. v. Parish, 110 Mo. App. l. c. 473, 85 S. W. 646, where the rule is stated as follows: ''In most instances there can be no recovery on a warranty in the sale of a chattel, for a perfectly obvious defect apparent on a simple inspection and which the purchaser had an opportunity to observe, unless the warranty expressly covered obvious defects. Neither, generally speaking, can an action be maintained for a defect known to the purchaser.''

However, I concur in the result reached because, leaving out of view the question of the warranty of soundness, the testimony of plaintiff which the jury believed shows that an express contract was made by

the defendant to take back the horse if there was anything wrong with him other than a little bump on his knee and a little bump on his head. It is not disputed that there was something else wrong with him; hence the defendant became obligated under that express contract to take back the horse and deliver over plaintiff's horse. Upon this ground I concur in the affirmance of the judgment.